1
2
3
4
5
6
7
8

9          **UNITED STATES DISTRICT COURT**

10         **SOUTHERN DISTRICT OF CALIFORNIA**

11   OSCAR OLIVAS,                           CASE NO. 14cv1434-WQH-
                                             BLM
12                        Plaintiff,
            vs.                              ORDER
13
     BILLY WHITFORD, Port Director of
14   Calexico West Port of Entry, Customs
     and Border Protection; PETE
15   FLORES, Director of Field Operations,
     San Diego Field Office, Customs and
16   Border Protection; R. GIL
     KERLIKOWSKE, Commissioner of
17   Customs and Border Protection; JEH
     JOHNSON, Secretary of Homeland
18   Security; JOHN KERRY, Secretary of
     State,
19
                         Defendants.
20

21
22   HAYES, Judge:

23          The matters before the Court are Defendants' Motion to Dismiss Complaint and

24   Drop Parties (ECF No. 22) and Defendants' Supplemental Motion to Dismiss (ECF No.

     48).
25
                                   **BACKGROUND**
26
27          On June 12, 2014, Plaintiff Oscar Olivas initiated this action by filing the Petition

28   for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief against

Defendants Pete Flores, Director of Field Operations for U.S. Customs and Border Protection's ("CBP") San Diego Field Office; Jeh Johnson, Secretary of Homeland Security; R. Gil Kerlikowske, Commissioner of CBP; John Kerry, U.S. Secretary of State; and Billy Whitford, Port Director of the Calexico West Port of Entry for CBP. (ECF No. 1).

On August 11, 2014, the Court issued an Order denying Defendants' request that the Petition for Writ of Habeas Corpus be dismissed for failure to name the proper respondent. (ECF No. 20). The Court found that the Petition for Writ of Habeas Corpus "adequately allege[d] a colorable claim of citizenship, and subject-matter jurisdiction exists in this Court." (ECF No. 20).

On August 12, 2014, Defendants filed the Motion to Dismiss Complaint and Drop Parties pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 21. (ECF No. 22).

On August 14, 2014, the Court issued an Amended Order referring the matter to the Magistrate Judge for expedited discovery. (ECF No. 23).

On November 5, 2014, Defendants filed the Supplemental Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), Federal Rule of Civil Procedure 12(b)(3), and Federal Rule of Civil Procedure 21. (ECF No. 48).

## ALLEGATIONS OF COMPLAINT

"[Plaintiff's] mother, Delia Perez ("Perez"), a Mexican national living in the United States, was unwed and without lawful immigration status in 1969." (ECF No. 1 ¶ 13). "[Plaintiff] was born in El Monte in Los Angeles County, California on August 10, 1969." *Id.* "Because of her immigration status in 1969, [Perez] was fearful of giving birth in a hospital...." *Id.* "[Plaintiff] was issued a 'delayed registration of birth' certificate on January 19, 1970, five months after his birth." *Id.*

In February of 2009, Plaintiff began applying for an immigrant visa for his wife, Claudia Hernandez ("Hernandez"), and step-son, both of whom are Mexican nationals. *Id.* ¶ 16. The process of obtaining such a visa for a Mexican national requires processing at the U.S. Consulate in Mexico. *Id.* On November 4, 2010, Hernandez

went to the U.S. Consulate in Ciudad Juárez for an interview as a part of her immigrant visa application process. *Id.* ¶ 17. At the interview, Hernandez was told that a consular official would need to interview [Plaintiff's] mother, Ms. Perez. *Id.*

> On December 17, 2010, Ms. Perez traveled to the U.S. Consulate in Ciudad Juárez, expecting to participate in a brief and non-adversarial interview. Instead, three officials escorted Ms. Perez to a room with a one-way glass window. A female official confronted Ms. Perez with [Plaintiff's] birth certificate and told her that she believed the birth certificate had been fraudulently obtained. Ms. Perez responded that [Plaintiff] ... had been issued a delayed birth certificate because he had not been born in a hospital. The female official … threatened that Ms. Perez would lose her citizenship and ... would be prosecuted for fraudulently obtaining a birth certificate unless Ms. Perez admitted that [Plaintiff] was born in Mexico. The female official told Ms. Perez that if she would agree to sign a declaration indicating that [Plaintiff] was born in Mexico, Ms. Perez would be permitted to keep her citizenship status and [Plaintiff] would be allowed to adjust the immigration status of his wife. Ms. Perez protested that she could not sign such a declaration because it would not reflect the truth….

*Id.* ¶ 18.

> The consular officials detained Ms. Perez in the room without access to the outside world for around three hours. Ms. Perez reasonably felt desperate and intimidated. She did not know when the 'interview' would end and reasonably felt that the consular officials planned to detain her until she agreed to sign the declaration. Eventually, Ms. Perez succumbed to pressure and intimidation exerted by the officials and told them that she would sign whatever they wanted her to sign. An official presented her with a statement and instructed her to sign her name. It appears that the same Department of State officer who exacted the "confession" from Ms. Perez later used this statement to amend [Plaintiff's] birth certificate on record with the State of California, without providing him any notice or opportunity to object.

*Id.* ¶ 19.

In early 2011, Plaintiff moved to Los Angeles for work while his family stayed in Mexicali, waiting for a determination on Hernandez's immigrant visa application. Plaintiff traveled between the United States and Mexico almost every week, using his birth certificate, Social Security card, and California driver's license to enter the United States. *Id.* ¶ 21.

On August 22, 2011, Plaintiff attempted to return to the United States at the Calexico West Port of Entry. CBP officers detained Plaintiff overnight and questioned him about his birth certificate, California driver's license, and Social Security card.

Plaintiff informed the officers that he is a U.S. citizen who was born and raised in the United States and had lived in the country for decades. Plaintiff explained that his mother had given a coerced confession at the U.S. Consulate in Ciudad Juárez. A CBP officer contacted Ms. Perez who confirmed Plaintiff's explanation of what had occurred at the consulate. The CBP officer told Plaintiff that he could see an Immigration Judge within a matter of hours or would have to wait "a month or two." *Id.* ¶ 22. Plaintiff told the officer that he would prefer to see a judge in a month because he would like some time to collect evidence of his citizenship. The officer assured Plaintiff that he would have a hearing on his citizenship claim soon. Plaintiff relied on the officer's assurance of a prompt hearing in deciding not to see an Immigration Judge that day. *Id.*

On August 23, 2011, CBP officers confiscated Plaintiff's birth certificate and Social Security card and removed him to Mexico. CBP officers gave Plaintiff a Notice to Appear which did not indicate a date or time for Plaintiff to appear for immigration proceedings. The officers instructed Plaintiff to call the immigration court system hotline to learn when his hearing would take place. Plaintiff diligently called the automated hotline twice a week for two years, but the response remained the same: either the case was not filed with the court or there is no match for the "Alien Number" that is listed on the Notice to Appear. *Id.* ¶ 23.

Plaintiff visited the Calexico West Port of Entry on several occasions, explaining that he is a U.S. citizen and asking when he would have his hearing in front of an Immigration Judge. Each time, a CBP officer told Plaintiff that "his hearing would be scheduled and all he could do is wait." *Id.* ¶ 24.

Through an immigration attorney, Plaintiff submitted an N-600 Application for Certificate of Citizenship. The immigration attorney incorrectly advised Plaintiff that he could receive a determination of his citizenship claim in an N-600 hearing. Plaintiff does not know whether the government ever reached a final disposition regarding his N-600 application. Plaintiff received notice that an interview on his N-600 application had been scheduled for March 6, 2013. *Id.* ¶¶ 27-28.

On February 8, 2013, Plaintiff sought parole at the Calexico West Port of Entry in order to attend the interview. CBP officers Lopez and Felix did not allow Plaintiff to enter the United States, preventing him from attending the interview. The officers informed Plaintiff for the first time that "a removal order had been 'internally' issued against him, but that he would not be provided a copy of the order or [] be allowed to view it." *Id*. ¶ 28.

Plaintiff last visited the Calexico West Port of Entry on or around February 26, 2013. Plaintiff explained that he is a U.S. citizen and asked CBP officers when he would have a hearing in front of a judge and how he could obtain a copy of any removal order issued against him. "CBP Officer Frank Hernandez told [Plaintiff] that if he returned to the Port of Entry, CBP officers would interpret his presence there as an attempt to gain admission" and that he "would be arrested, detained for a period of time that would 'not be brief,' and removed without seeing a judge." *Id*. ¶ 29. "[Plaintiff] has never been permitted to view a copy of the purported order of removal that was allegedly entered against him." *Id*. ¶ 30. "[Plaintiff] has never been informed of any date, time, or place to appear for any hearing before an immigration judge." *Id*. "CBP Defendants have failed to refer [Plaintiff's] matter to an immigration judge as required by law." *Id*.

Although government officials have never allowed Plaintiff to view the purported removal order that was allegedly issued against him, CBP officers may have executed an "Expedited Removal" order against him. If so, that order violated regulations that mandate a claimed status review hearing before an immigration judge for any person asserting U.S. citizenship. *Id*. ¶ 32.

In addition to the Writ of Habeas Corpus, the Complaint for declaratory and injunctive relief alleges four claims against all Defendants in their official capacities: (1) violation of Plaintiff's right to return to the United States pursuant to the Fifth and Fourteenth Amendments and the Non-Detention Act by illegally, arbitrarily, and capriciously determining Plaintiff is not a U.S. citizen and/or removing him to Mexico;

(2) violation of Plaintiff's right against unlawful detention pursuant to the Fifth and Fourteenth Amendments and the Non-Detention Act by illegally, arbitrarily, and capriciously determining Plaintiff is not a U.S. citizen and asserting the right to detain him; (3) violation of the Fifth Amendment right to procedural due process by illegally, arbitrarily, and capriciously determining Plaintiff is not a U.S. citizen and/or removing Plaintiff from the United States without such judicial determination of his claim to U.S. citizenship; and (4) violation of the Fifth Amendment right to substantive due process by illegally, arbitrarily, and capriciously determining Plaintiff is not a U.S. citizen and/or removing him to Mexico and by pressuring his mother to make a false statement about his birth.  (ECF No. 1 at 18-20).

Plaintiff's Complaint requests that the Court: (1) grant the order to show cause requested in the application filed with the Complaint; (2) issue a writ of habeas corpus ordering Defendants to allow Plaintiff to enter the United States without detaining him; (3) declare the Plaintiff is a U.S. citizen; (4) declare that any order directing or authorizing Plaintiff's removal from the United States was entered in violation of the Due Process Clause of the Fifth Amendment and/or other applicable law and is therefor null and void; (5) enjoin Defendants and their officers, agents, servants, employees, attorneys, and/or successors from prohibiting Plaintiff from entering the United States and/or detaining him at or after such entry; (6) grant reasonable attorneys' fees, costs, and other disbursements pursuant to the Equal Access to Justice Act, 28 U.S.C. section 2412; and (7) grant such other relief as the Court deems just and equitable. *Id*. at 20-21.

## ANALYSIS

## I.    Motion to Dismiss for lack of Subject Matter Jurisdiction

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) asserts a lack of subject-matter jurisdiction over the dispute, and may be either a facial attack on the sufficiency of the pleadings or a factual attack on the basis for a court's jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In determining the presence or absence of federal jurisdiction, the court applies the "'well-pleaded complaint rule,'

1   which provides that federal jurisdiction exists only when a federal question is presented

2   on the face of the plaintiff's properly pleaded complaint." *Cal. ex rel. Lockyer v.*

3   *Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (quoting *Caterpillar Inc. v. Williams,*

4   482 U.S. 386, 392 (1987)).  When assessing subject-matter jurisdiction, the court

5   assumes the truth of all allegations in the complaint. *See Castaneda v. United States*,

6   546 F.3d 682, 684 n.1 (9th Cir. 2008).

7   **Contentions of Parties**

8         Defendants, sued in their official capacity, contend that the Complaint should be

9   dismissed for lack of subject matter jurisdiction because Plaintiff has not alleged facts

10  to support a waiver of sovereign immunity.  Defendants contend that Plaintiff has

11  invoked general subject matter jurisdiction pursuant to 28 U.S.C. section 1331, but

12  Section 1331 does not provide a waiver of sovereign immunity.  Defendants contend

13  that a waiver of sovereign immunity for Plaintiff's claims that CBP officers acted

14  unconstitutionally must be found in Title 8, not Title 5, of the United States Code.

15  Defendants further contend that the complaint against the government must be

16  dismissed unless it sets forth statutes waiving sovereign immunity.

17        Plaintiff contends that he has properly invoked federal question jurisdiction under

18  28 U.S.C. section 1331 to plead claims for declaratory and injunctive relief for the

19  violations of his constitutional rights by government officials.  Plaintiff contends that

20  5 U.S.C. section 702 expressly waives "sovereign immunity in non-statutory review

21  actions for nonmonetary relief brought under 28 U.S.C. § 1331." (ECF No. 31 at 4).

22  Plaintiff contends that CBP or its predecessor agencies are subject to injunctive relief

23  for violating constitutional rights and directly refutes Defendants' position that Plaintiff

24  must invoke a waiver of sovereign immunity found in Title 8.  Plaintiff further contends

25  that cases cited by Defendants concern the substantive question of whether the

26  government had, in fact, waived sovereign immunity over the claims in question and

27  do not require Plaintiff to cite the statute waiving sovereign immunity in the Complaint.

28  **Sovereign Immunity**

The United States, as a sovereign, is immune from suit. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). "It is axiomatic that Congressional waiver of sovereign immunity is a prerequisite to any suit brought against the United States." *Roberts v. United States*, 498 F.2d 520, 525 (9th Cir. 1974). The United States "may not be sued without its consent and the terms of such consent define the court's jurisdiction." *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987). A waiver of sovereign immunity in any statute "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). "A party bringing a cause of action against the federal government bears the burden of showing an unequivocal waiver of immunity." *Baker*, 817 F.2d at 562. "Unless sovereign immunity has been waived or does not apply, it bars equitable as well as legal remedies against the United States." *Beller v. Middendorf*, 632 F.2d 788, 796 (9th Cir. 1980) (citing *Jaffee v. United States*, 592 F.2d 712, 717 n.10 (3d Cir. 1979).

28 U.S.C. section 1331 does not waive the government's sovereign immunity for claims against government officials sued in their official capacity. *Hughes v. United States*, 953 F.2d 531, 539 n.5 (9th Cir. 1992). However, "Section 702 waives the government's sovereign immunity, and thus permits the exercise of jurisdiction, in actions seeking non-monetary relief with respect to agency action." *Id*. at 537. Section 702 provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

1   5 U.S.C. § 702.

2         In *Beller v. Middendorf*, 632 F.2d 788 (9th Cir. 1980), Plaintiff sued the Secretary

3   of U.S. Navy in his official capacity. The United States Court of Appeals for the Ninth

4   Circuit examined the scope of a waiver of sovereign immunity under section 702. The

5   Court of Appeals stated:

6         In *Glines v. Wade*, 586 F.2d 675 (9th Cir. 1978) ... plaintiff Glines, a
      Captain in the Air Force Reserves on active duty, violated a regulation
7         requiring him to obtain approval from his commander before circulating
      petitions on Air Force bases. As a result of his unauthorized activities,
8         Glines was removed from active duty and reassigned to the standby
      reserves, with adverse financial consequences. This court concluded the
9         regulations violated Glines' first amendment rights. It then held that "the
      district court was correct in declaring the regulations void, enjoining their
10        enforcement, and ordering Glines reinstated in a status that is consistent
      with his status before he was relieved from active duty." 586 F.2d at 681.
11        The [C]ourt held that sovereign immunity did not bar the district court
      from awarding this nonmonetary relief:
12

13              (In) actions claiming that a government official acted in
            violation of the Constitution or of a statutory authority ...
14              Congress has either waived sovereign immunity or the
            doctrine does not apply. 5 U.S.C. [§] 702; *Larson v.*
15              *Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 689-
            91 (1949); *Hill v. United States*, 571 F.2d 1098, 1102 (9th
16              Cir. 1978).
      ...
17        We construe the decisions in *Glines* and *Hill* as holding that section 702
      waives sovereign immunity for [the] action brought under 28 U.S.C. §
18        1331 seeking nonmonetary relief for violation of [Plaintiff's] Fifth
      Amendment rights. We recognize the division of authority on the question
19        whether and under what circumstances section 702 waives sovereign
      immunity in actions brought under 28 U.S.C. [§] 1331.
20
      ...we think [*Glines*] states the controlling law of this circuit. We therefore
21        affirm the district court's determination that it had jurisdiction over
      [Plaintiff's] claims for nonmonetary relief under 28 U.S.C. [§] 1331.
22

23  *Beller*, 632 F.2d at 796-97.

24        The Court of Appeals addressed the waiver of sovereign immunity under Section

25  702 again in *Presbyterian Church v. U.S.*, 870 F.2d 518 (9th Cir. 1989). The Court of

26  Appeals stated: "[Section] 702 of the [APA], 5 U.S.C. § 702 ... waives sovereign

27  immunity for the churches' claims for relief [against the United States, the Department

28  of Justice, and the INS] other than money damages." *Presbyterian Church*, 870 F.2d

at 523-24. "The clear objective of the 1976 amendment was to waive sovereign

immunity as a defense in actions seeking relief other than money damages.  Congress was quite explicit about its goals of eliminating sovereign immunity as an obstacle in securing judicial review of the federal official conduct." *Id*. at 524 (citation omitted).  The Ninth Circuit concluded: "[O]n its face, the 1976 amendment to § 702 waives sovereign immunity in all actions seeking relief from official misconduct except for money damages." *Id*. at 525.

**Ruling of Court**

In this case, Plaintiff's Complaint invokes federal question jurisdiction under 28 U.S.C. section 1331.  *See* ECF No. 1.  Plaintiff alleges that Defendants are officers or employees of the Department of Homeland Security and the Department of State sued in their official capacities.  *See* ECF No. 1 at 5-6.  Plaintiff alleges that Defendants violated Plaintiff's constitutional rights by "pressuring his mother to make a false statement about his birth," "determining Plaintiff is not a U.S. citizen," and "removing Plaintiff from the United States without [a] judicial determination of his claim to U.S. citizenship." *Id*. at 19-20.  The Court concludes that 5 U.S.C. section 702 waives sovereign immunity for Plaintiff's action, seeking non-monetary relief from government officials allegedly acting in violation of his Constitutional rights.  *See Beller*, 632 F.2d at 796-97; *Presbyterian Church*, 870 F.2d at 523-25.

In *Ardestani v. I.N.S.*, 502 U.S. 129 (1991), the United States Supreme Court held that Title 8 "'expressly supersedes' the hearing provisions of the APA" because "Congress intended the provisions of [Title 8] to supplant the APA in immigration proceedings." In this case, Plaintiff alleges in his Complaint that he does not challenge an expedited removal.  There is no indication that a deportation proceeding was conducted or that an order of expedited removal was issued against Plaintiff.  Plaintiff alleges that Defendants determined that he was not a U.S. citizen without a "judicial determination of his claim to U.S. citizenship." (ECF No. 1 ¶ 50).  Plaintiff alleges that each Defendant violated the Fifth and Fourteenth Amendments by "illegally, arbitrarily, and capriciously determining Plaintiff is not a U.S. citizen," "asserting the right to

detain him," and "removing Plaintiff from the United States without such judicial determination of his claim to U.S. citizenship."  *See* ECF No. 1 ¶¶ 43, 47, 50, 52.  The Court finds that Plaintiff's claims do not require a waiver of sovereign immunity found in Title 8 because Plaintiff does not seek review of the merits of a deportation proceeding pursuant to 8 U.S.C. section 1225.

Finally, the Court finds no authority for Defendant's contention that this case must be dismissed on grounds that Plaintiff has not cited 5 U.S.C. section 702 in his Complaint.  The language in each case relied upon by Defendants refers to whether Congress has waived the sovereign immunity of the government and does not address pleading requirements.  *See U.S. v. Mitchell*, 445 U.S. 535, 536 (1980) ("This case presents the question whether the Indian General Allotment Act of 1887 authorizes the award of money damages against the United States"); *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text."); *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) ("Such a waiver must also be unequivocally expressed in the statutory text.") (internal citations omitted)*; Blue v. Widnall*, 162 F.3d 541, 545 (9th Cir. 1998) ("the general judicial review provisions of the APA never confer jurisdiction to review federal personnel actions").

Defendants' Motion to Dismiss (ECF No. 22) is denied.

## II.    SUPPLEMENTAL MOTION TO DISMISS (ECF No. 48)

## Subject Matter Jurisdiction Over Plaintiff's Action Against CBP

Defendants contend that Plaintiff's constitutional challenges to the expedited removal policies and procedures of CBP are limited by 8 U.S.C. section 1252(e)(3) and may only be brought in the District of Columbia.  Plaintiff contends that he does not challenge any expedited removal proceeding or order in this action and section 1252(e)(3) does not apply.

8 U.S.C. section 1252(e)(3) provides:

(e) Judicial review of orders under section 1225(b)(1)

(3) Challenges on validity of the system

(A) In general

Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of–

(i) whether such section, or any regulation issued to implement such section, is constitutional; or

(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3).

In this case, the Complaint alleges that:

The officers informed [Plaintiff] for the first time that a removal order had been "internally" issued against him, but that he would not be provided a copy of the order or even be allowed to view it.
....

[Plaintiff] has never been permitted to view a copy of the purported order of removal that was allegedly entered against him. He has never been informed of any date, time, or place to appear for any hearing before an immigration judge.... [T]he CBP Defendants have failed to refer [Plaintiff's] matter to an immigration judge as required by law.

....

Although government officials have never allowed [Plaintiff] to view the purported removal order that was allegedly issued against him, ... , CBP officers may have executed an "Expedited Removal" order against him.

(ECF No. 1 ¶ 28, 30, 32).  The Complaint further asserts that:

By illegally, arbitrarily, and capriciously determining Plaintiff is not a U.S. citizen and/or removing Plaintiff from the United States without such judicial determination of his claim to U.S. citizenship, Defendants deprived Plaintiff of his right to due process in violation of the Fifth Amendment to the United States Constitution.

....

Defendants denied Plaintiff his Fifth Amendment right to substantive due process by ... willfully withholding information from him regarding his removal.

*Id*. ¶ 50, 53.

Plaintiff alleges violations of the Fifth and Fourteenth Amendments of the

Constitution on the grounds that Defendants determined that he was not a U.S. citizen without a "judicial determination of his claim to U.S. citizenship." (ECF No. 1 ¶ 50). There is no allegation that a removal proceeding took place or that an order was issued. Plaintiff's challenge is not subject to 8 U.S.C. section 1252(e)(3) because it is not a challenge to the validity of expedited removal proceedings pursuant to section 1225(b)(1).

**Improper Venue for Plaintiff's Action Against the Secretary of State**

Defendants contend that Plaintiff's action asserting constitutional challenges to certain consular policies and procedures should be dismissed for improper venue. Defendants contend that the constitutional claims asserted against the Secretary of State are separate from the factual allegations and relief sought in the habeas action. Defendants contend that this judicial district is not the proper venue for the action because neither the CBP Commissioner, R. Gil Kerlikowske, nor the U.S. Secretary of State, John Kerry reside in this judicial district, and the policies and procedures being challenged did not occur in this judicial district. Defendants contend that the U.S. District Court for the District of Columbia is the only proper venue because the official residence of the Secretary of State is Washington, D.C., and the Plaintiff resides abroad.

Plaintiff contends that he has satisfied the venue statute. Plaintiff contends that he may bring a cause of action against additional officers or employees of the United States in this district because CBP officers Whitford and Flores reside in this district and are appropriately named as custodians of Plaintiff. Plaintiff further contends that he satisfies 28 U.S.C. section 1391(e)(1)(B), because a substantial part of the events giving rise to his claims occurred here.

28 U.S.C. section 1391(e)(1) states in relevant part:

A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated....

28 U.S.C. § 1391(e)(1)(A), (B).  The Complaint alleges that the CBP custodians, Whitford and Flores, reside in this judicial district.  The violations alleged against the Secretary of State arise from the events that gave rise to Plaintiff's claims against the CBP custodians, Whitford and Flores.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss Plaintiff's Complaint (ECF No. 22) is DENIED and the Ex Parte Supplemental Motion to Dismiss (ECF No. 48) is DENIED.

DATED:  March 2, 2015

**WILLIAM Q. HAYES**
United States District Judge