UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR OLIVAS,<br><br>                        Petitioner,<br><br>v.<br><br>BILLY WHITFORD, Port Director of Calexico West Port of Entry, Customs and Border Protection; PETE FLORES, Director of Field Operations, San Diego Field Office, Customs and Border Protection; R. GIL KERLIKOWSKE, Commissioner of Customs and Border Protection; JEH JOHNSON, Secretary of Homeland Security; JOHN KERRY, Secretary of State,<br><br>                        Respondents. | Case No.: 14-cv-1434-WQH-BLM<br><br>**ORDER** |

HAYES, Judge:

      The matters before the Court are the Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief filed by Petitioner (ECF No. 1) and the Motion to Supplement the Record filed by Respondents (ECF No. 235).

**I.     PROCEDURAL BACKGROUND**

      On June 12, 2014, Petitioner filed a "Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief," naming as Respondents two local

Customs and Border Patrol (CBP) officials, the Commissioner of the CBP, the Secretary of Homeland Security, and the Secretary of State. (ECF No. 1 ). Petitioner brings a claim for habeas relief pursuant to 28 U.S.C. § 2241 on the grounds that he is "a natural-born U.S. citizen" who was "unlawfully exiled to Mexico" when "CBP officials unlawfully refused to allow him to enter the United States." *Id.* ¶¶ 1–2. Petitioner brings the following four claims: (1) Right of U.S. Citizen to Return to United States under the Fifth and Fourteenth Amendments and the Non-Detention Act; (2) Right of U.S. Citizen Against Unlawful Detention under the Fifth and Fourteenth Amendments and the Non-Detention Act; (3) Violation of Fifth Amendment (Procedural Due Process); and (4) Violation of Fifth Amendment (Substantive Due Process). Petitioner asserts jurisdiction under § 2241, "§ 1331 (federal question)," "§§ 2201–02 (declaratory relief)," "Federal Rule of Civil Procedure 65 (injunctive relief), and the Fifth and Fourteenth Amendments to the U.S. Constitution." *Id.* at 4. Petitioner requests that this Court: "Issue a writ of habeas corpus ordering Defendants to allow Plaintiff to enter the United States without detaining him," "Declare the Plaintiff is a U.S. citizen," "Declare that any order directing or authorizing Plaintiff's removal from the United States was entered in violation of the Due Process Clause of the Fifth Amendment and/or other applicable law and is therefore null and void," and "Enjoin Defendants and their officers, agents, servants, employees, attorneys, and/or successors from prohibiting Plaintiff from entering the United States and/or detaining him at or after such entry . . . ." *Id.* at 20–21.

On June 16, 2014, the Court ordered Respondents to show cause why the Petition should not be granted. (ECF No. 5).

On July 8, 2014, Respondents filed a return to the Petition. (ECF No. 12). In the Return, Respondents allege that "[o]n December 17, 2010, Petitioner's mother, Ms. Olivas-Cervantes, was interviewed by a consular officer at the U.S. Consulate in Ciudad Juarez, Mexico." *Id.* at 2. "During the interview, Ms. Olivas-Cervantes signed an affidavit stating that Petitioner was not born in Los Angeles, but was born in a clinic in Tijuana, Mexico." *Id.* at 3. "On or about August 22, 2011, Petitioner applied for admission to the United

States at the Calexico Port of Entry, claiming he was a U.S. citizen." *Id.* at 4. "The CBP officer who was processing Petitioner's application for admission prepared documentation to commence removal proceedings before an Immigration Judge ('IJ') . . . [t]wo notices to Appear ('NTA') were prepared, and both appeared to have been 'cancelled,' under 8 C.F.R. § 239.2 prior to the commencement of proceedings." *Id.* at 5.

On July 22, 2014, Petitioner filed a traverse. (ECF No. 15).

On August 14, 2014, the Court issued an amended Order denying a motion to dismiss the Petition, referring the matter for expedited discovery, and stating, "The Court finds that the Petition adequately alleges a colorable claim of citizenship, and subject-matter jurisdiction exists in this Court." (ECF No. 23).

On March 2, 2015, the Court denied a motion to dismiss filed by Respondents on the ground that 8 U.S.C. §1252(e)(3) deprives the Court of subject matter jurisdiction. The Court found that judicial review of Petitioner's claim is not precluded by § 1252(e)(3) "because it is not a challenge to the validity of expedited removal proceedings" and "[t]here is no allegation that a removal proceeding took place or that an order was issued." (ECF No. 72 at 13).

In August of 2015, the parties filed supplemental briefing regarding the standard and burden of proof. (ECF Nos. 96, 99, 102, 104, 105, 108). On November 2, 2015, the Court issued an Order ruling on motions in limine and stating:

> Petitioner has asserted a non-frivolous claim of U.S. citizenship and this Court has jurisdiction pursuant to 28 U.S.C. § 2241 over Petitioner's habeas petition challenging his exclusion from the United States. *See Flores-Torres v. Mukasey*, 548 F.3d 708, 712–13 (9th Cir. 2008) (finding that the court had habeas jurisdiction where petitioner challenged his detention in the absence of a final order of removal).
> Pursuant to 28 U.S.C. § 2243, Petitioner is entitled to an evidentiary hearing to prove the disputed fact that he was born in El Monte, California and that he is entitled to an order allowing him to enter and remain in the United States. The Court will hold an evidentiary hearing to "summarily hear and determine" the disputed fact of petitioner's place of birth and citizenship. 28 U.S.C. § 2243.

> Petitioner bears the burden of establishing, by a preponderance of the evidence, that he is being unlawfully excluded from the United States because he is a citizen of the United States by birth. *See Snook v. Wood*, 89 F.3d 605 (9th Cir. 1996) ("It is the petitioner's burden to prove his custody in violation of the Constitution, laws or treaties of the United States."). *See also Berenyi v. District Director, Immigration & Naturalization Serv.*, 385 U.S. 630, 670–71 (1967) (finding that when a person outside of the United States seeks a declaration of citizenship, "[h]e is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship. . . . [I]t has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect.").

(ECF No. 126 at 3–4). The Court further noted,

> In the immigration context the government brings the action to remove a non-citizen who is currently residing in the United States or to expatriate a current citizen and therefore the burden of proof may shift to the government. *See e.g.*, *Perez v. Brownell*, 356 U.S. 44, 47 n. 2 (1958) ("The Government must prove the act of expatriation on which the denial [of a declaration of nationality] was based by 'clear, unequivocal, and convincing' evidence . . . ." (internal citations and quotation marks omitted)); *Lim v. Mitchell*, 431 F.2d 197, 199 (9th Cir. 1970) (shifting the burden from Plaintiff to the government to rebut Plaintiff's evidence of citizenship when Plaintiff was living in the United States and had previously been given a certificate of identity as a citizen after a hearing before the Board of Special Inquiry).

*Id.* at 4 n.1. The Court held a four-day evidentiary hearing beginning on November 12, 2015. (ECF Nos. 135, 137–39).

On June 28, 2016, the Court denied the Petition, concluding that "Petitioner has not met his burden to prove that he is being unlawfully excluded from the United States because he is a citizen of the United States by birth." (ECF No. 167 at 39).

On August 16, 2017, the Court ordered entry of judgment in favor of Respondents and against Petitioner as to all claims in this action, concluding that the Court lacked jurisdiction over the remaining claims. (ECF No. 212).

On November 29, 2018, the Court of Appeals vacated this Court's August 16, 2017 Order, stating, "The district court erred in requiring Olivas to bear the burden of proving his citizenship by a preponderance of the evidence. Instead, as we held in *Mondaca-Vega*

*v. Lynch*, a burden-shifting framework applies in alienage determination cases." *Olivas v. Salazar*, 743 F. App'x 890, 890–91 (9th Cir. 2018) (citing *Mondaca-Vega v. Lynch*, 808 F.3d 413 (9th Cir. 2015)); ECF No. 230 (same). The Court of Appeals remanded to this Court to weigh the evidence using the *Mondaca-Vega* framework, "in which the government presents evidence of alienage, the petitioner responds with substantial credible evidence of citizenship, and then the burden shifts back to the government to prove alienage by clear and convincing evidence." *Id.* at 891. The Court of Appeals rejected the government's argument that *Mondaca-Vega* applies only in removal proceedings, not in this action for habeas and declaratory relief. *Id.* at 890 n.1. The Court of Appeals stated,

> Olivas was served with a Notice to Appear ("NTA"), which should have triggered a hearing before an immigration judge. But because the government failed for over two years to file the NTA with the immigration court, no hearing was ever scheduled. After repeated unsuccessful attempts to inquire about the status of his hearing, on June 12, 2014, Olivas filed this suit seeking determination of his citizenship status. . . .
>
> [T]he government concedes that had it commenced removal proceedings by filing the NTA, as it admits at oral argument that it was required to do, *see* 8 C.F.R. §§ 1235.3(b)(5), 1235.6, 1003.13, 1003.14(a), *Mondaca-Vega* would squarely control. Olivas claims that for two years, he called the government's hotline number weekly, and visited the border at least seven times, to inquire about a hearing. He claims that agents threatened him with detention if he persisted. The government may not benefit from its own negligence.

*Id.* at 890 & n.1.

On May 8, 2019, Respondents filed the Motion to Supplement the Record, on the grounds that additional evidence is necessary to identify the correct basis of subject matter jurisdiction and apply the burden-shifting framework on remand. (ECF No. 235).

On May 9, 2019, Respondents filed supplemental briefing on the Petition. (ECF No. 238).

On May 22, 2019, Petitioner filed a response in opposition to the Motion to Supplement the Record. (ECF No. 242).

5

On May 22, 2019, Petitioner filed a response in opposition to Respondents' supplemental briefing on the Petition. (ECF No. 241).

On June 19, 2019, Respondents filed a reply in support of the Motion to Supplement the Record. (ECF No. 246).

On June 19, 2019, Respondents filed a reply in support of their supplemental briefing on the Petition. (ECF 247).

On July 11, 2019, the Court heard oral argument. (ECF No. 248).

## II. MOTION TO SUPPLEMENT THE RECORD

Respondents request that the Court admit for all purposes, under the residual hearsay exception of Federal Rule of Evidence 807(a), the affidavit signed by Delia Perez, Petitioner's mother, at the U.S. Consulate in Ciudad Juarez on December 17, 2010 (the Juarez Statement), which the Court previously admitted for impeachment purposes only.[1] Respondents contend that the Court should receive additional documents because the Court of Appeals "changed the basis of subject matter jurisdiction and flipped the burden of proof." (ECF No. 246 at 2). Respondents contend that the requirements of the residual hearsay exception are satisfied because the Juarez Statement has numerous equivalent circumstantial guarantees of trustworthiness and contains direct, freestanding evidence of the material fact of Petitioner's birthplace. Respondents contend that admitting the Juarez Statement is in the interest of justice because the State of California amended Petitioner's birth certificate to indicate the falsity of Petitioner's original birth certificate based on the Juarez Statement. Respondents contend that the conclusion of the Court of Appeals, that this Court did not abuse discretion by admitting the Juarez Statement for impeachment only, "is *orbiter dictum* and lacks context" because neither party challenged this Court's

---

[1] Rule 807(a) provides: "Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." Fed. R. Evid. 807(a).

6

14-cv-1434-WQH-BLM

evidentiary rulings on appeal. *Id.* Respondents assert that the Juarez Statement is more probative than Perez's trial testimony because the Juarez Statement occurred when Perez "was caught off guard, after forty years, when confronted with the inconsistencies in the birth registration and her story about the circumstances of [Petitioner's] birth." *Id.* at 6.

Petitioner contends that Respondents waived the argument that the Juarez Statement satisfies the residual hearsay exception by failing to raise the residual hearsay exception before this Court or the Court of Appeals. Petitioner contends that Respondents are precluded from pursuing the residual hearsay exception at this stage in the litigation. Petitioner contends that the conclusion of the Court of Appeals, that this Court did not abuse discretion by admitting the Juarez Statement for impeachment only, constitutes the law of the case. Petitioner contends that no departure from the law of the case is justified under the circumstances. Petitioner contends that the residual hearsay exception requirements are not satisfied. Petitioner asserts that the affidavit is not more probative than any other evidence because Perez was available to testify and did testify. Petitioner contends that admitting the affidavit is not in the interests of justice because Respondents had the opportunity to investigate and prove its case and failed to produce evidence of foreign birth.

In addition, Respondents request that the Court admit documents related to the CBP's August 23, 2011 determination that Petitioner was inadmissible; in particular, the cover page, form I-860, form I-296, form I-862, form I-213, and a TECS printout.[2] Respondents assert that they seek admission of the documents "to establish the basis of this Court's subject matter jurisdiction and not for the truth of the matters stated therein." (ECF No. 235-1). Respondents contend that the documents demonstrate that the exclusive basis of the Court's jurisdiction in this case is 8 U.S.C. § 1252(e)(2)(A) by showing that

---

[2] "[T]he Treasury Enforcement Communication System ('TECS') . . . is an investigative tool of the Department of Homeland Security that keeps track of individuals entering and exiting the country and of individuals involved in or suspected to be involved in crimes." *United States v. Cotterman*, 709 F.3d 952, 958 & n.3 (9th Cir. 2013).

7

Petitioner was processed for expedited removal proceedings pursuant to a determination of inadmissibility. Respondents contend that the documents are now relevant to subject matter jurisdiction because the Court of Appeals "has, in effect, reversed this Court's prior ruling" that subject matter jurisdiction is proper under general § 2241 habeas. (ECF No. 246 at 4). Respondents contend that the records are admissible as administrative records. Respondents assert that the entire administrative record was identified in the pretrial order, and that Respondents seek to admit documents selected from that record.

Petitioner contends that the Court should not admit the documents because Respondents had a full and fair opportunity to offer all available evidence regarding Petitioner's citizenship, and the Court ordered Respondents to do so. Petitioner contends that the references to *Mondaca-Vega* and an expedited removal regulation in the remand order do not convert this case into a proceeding for review of an expedited removal order. Petitioner asserts that the references confirm that Petitioner is entitled to a de novo judicial determination of citizenship. Petitioner asserts that Respondents did not previously advance an expedited removal theory or properly identify the documents. Petitioner asserts that he was determined inadmissible and "released to Mexico" without any sort of removal order. Petitioner asserts that the Court of Appeals confirmed, and Respondents acknowledged on appeal, that Petitioner was not in removal proceedings. Petitioner asserts that the Court previously determined at the evidentiary hearing that the I-213 and TECS printout were not admissible for the truth of the matter asserted. Petitioner contends that the documents are inadmissible because they are irrelevant, lack foundation, and contain multiple levels of hearsay. Petitioner contends that the business records hearsay exception does not apply to government agency records and the public records exception does not apply to statements of third parties without a legal duty to report.

The Court of Appeals has stated that "a district court is limited by this court's remand in situations where the scope of the remand is clear." *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th Cir. 2006). In remanding this case, the Court of Appeals directed this Court "to apply the burden-shifting framework set forth in *Mondaca-Vega*" for purposes

of determining whether Petitioner is an "alien." *Olivas*, 743 F. App'x at 891. The Court of Appeals further stated, "The district court did not abuse its discretion in admitting Delia Perez's out-of-court statement solely for impeachment purposes. In the district court and now on appeal, the government has identified no hearsay exception that would apply." *Id.*

The Court finds that the scope of the remand is clear and limited to weighing the evidence in accordance with *Mondaca-Vega*. *Cf. Abdulrafi v. Lockyer*, 121 F. App'x 226, 227 (9th Cir. 2005) (stating expressly that appellant was permitted to supplement the record; remanding to the district court "to reconsider its denial of Abdulrafi's petition in light of this new evidence"); *see also Creech v. Ramirez*, No. 1:99-CV-00224-BLW, 2017 WL 1129938, at *11 (D. Idaho Mar. 24, 2017) ("[T]his case is before this Court on a limited remand. It is not a free-for-all. Specifically, there is no language in the Ninth Circuit's order suggesting that the Court of Appeals empowered this Court to reopen the record and accept additional, post-remand evidence."). In addition, the transcript of the October 22, 2015 hearing reflects the following statements regarding the burden of proof and the presentation of evidence:

> THE COURT: . . . . And what I would envision is that . . . the petitioner would go forward with all the evidence that you have, whatever evidence that you have that you think is relevant to your burden, you put it all on; you don't hold anything back; you put everything on that you think you should put on, and then the respondent goes forward; they put on all the evidence that they have, and then at the conclusion, if you have any rebuttal you put that on.
> And then at some point I would indicate, all right, here's the legal matter; here's the burden that you had; and whether it is I agree with the Government or I agree with you, it is either you have met it or you haven't met it, and it is not the case that that is going to have any impact on the presentation of evidence.
> If you have a burden, you go forward with all the evidence that you have, and then Mr. Bettwy, he puts on evidence that he puts on, and if you have rebuttal, you put it on . . . whether I agree with the Government or I agree with you[,] that that legal determination would not affect the presentation of evidence. Do you agree?
> MS. RIVERA: I agree with that, Your Honor.
> THE COURT: Do you agree, Mr. Bettwy?
> MR. BETTWY: Yes, Your Honor.

9

> THE COURT: All right. . . . I wanted to avoid . . . a situation where petitioner puts their case on, the Government -- respondent puts their case on, and suppose there is no rebuttal, and then I conclude -- suppose I was to conclude that the Government was right. What I didn't want to happen is the petitioner would be in the position to say, oh, wait a minute, I didn't think that; we thought we had the burden to go forward with some evidence; we went forward with some evidence, and then the burden shifted to them, and had we known that you were going to put the burden on us for the entirety of the case, we had this other evidence we would have put on, and, you know, we were misled by your, you know, your failure to rule. And so I don't want there to be, you know, misunderstanding . . . .
> [I]s it fair to say that petitioner is in agreement that it doesn't matter with respect to the presentation of evidence whether the Court determines the Government is right on the burden or the Court determines the petitioner is right on the burden. That legal decision obviously may affect the outcome of the case, but it will not have any impact on the presentation of the evidence. Do you agree?
> MS. RIVERA: That's right, Your Honor, with respect to the presentation of evidence at trial.
> THE COURT: You agree as well, Mr. Bettwy?
> MR. BETTWY: I believe -- yes, Your Honor. With respect -- from the Government's point of view, I suppose I would be thinking wors[t] case scenario is we have the burden of proving by clear and convincing evidence, but it would not affect -- we wouldn't be holding back with that thought otherwise . . . .

(ECF No. 222 at 31–33). The record reflects that the parties have had the opportunity to present all available evidence and agreed that the burden of proof would not affect the presentation of the evidence. The record reflects that the Court declined to consider the Juarez Statement or the I-213 report for the truth of the matter asserted. *See* ECF 167 at 36 n.11; ECF No. 147 at 26:12–13. The record does not provide grounds to disturb the Court's previous evidentiary rulings. The record does not provide grounds to depart from the Court's previous orders stating that subject matter jurisdiction in this matter is pursuant to § 2241, based on Petitioner's non-frivolous claim of U.S. citizenship and the absence of a final order of removal. *See* ECF No. 126 at 3. The mandate of the Court of Appeals does

not require reconsideration of evidentiary rulings or subject matter jurisdiction in this case. Respondent's motion to supplement the record is denied.

### III. ANALYSIS ON REMAND

Respondents contend that the government's burden of proof at the first step of the *Mondaca-Vega* framework, in the context of this case, has not been established by case law. Respondents contend that the government's initial burden is necessarily less than clear and convincing evidence because the government usually bears the burden of clear and convincing evidence when removing or deporting a person, and the government usually bears no burden of proof when a person seeks admission to the United States. Respondents contend that the government's initial burden is necessarily less than clear and convincing evidence because, in cases analogous to this case, the government bears a clear and convincing evidence burden only when there has been a prior determination of citizenship. Respondents contend that the Court of Appeals necessarily agreed with this Court's conclusion that there was no prior citizenship determination in this case. Respondents contend that, if there was a prior citizenship determination, the Court of Appeals would have remanded for Respondents to prove that Petitioner is not a citizen by clear and convincing evidence, rather than remanding for application of the *Mondaca-Vega* framework. Respondents contend that the government's burden in this case is satisfied by Petitioner's judicial admissions and the evidence on the record.

Petitioner contends that the first step of the *Mondaca-Vega* framework requires the government to provide direct admissible evidence that Petitioner was born in Mexico. Petitioner contends that there is no legal distinction between deportation proceedings and inadmissibility proceedings; rather, both deportation and exclusion occur in removal proceedings, in which the government has the burden of proof by clear and convincing evidence. Petitioner contends that this Court's conclusion that there was no prior citizenship determination was necessarily displaced because the Court of Appeals cited *Lee Hon Lung v. Dulles*—a case in which the government had the burden of proof of clear and convincing evidence because there was a prior citizenship determination. (ECF No. 241

at 42–43 (citing 261 F.2d 719, 724 (9th Cir. 1958))). Petitioner contends that Respondents fail to carry the government's burden of clear and convincing evidence because the evidence in this case is scant, indirect, and inconclusive. Petitioner contends that impeaching testimony that Petitioner was born in the United States does not provide evidentiary value in support of the government's case. Petitioner contends that any absence of evidence cuts against Respondents, who bear the burden of proof at this stage in the litigation.

Once a petition for a writ of habeas corpus is filed in federal court pursuant to 28 U.S.C. § 2241, the court must comply with the procedures set forth by 28 U.S.C. § 2243:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto. . . .
> The person to whom the writ or order is directed shall make a return certifying the true cause of detention. . . .
> The applicant or the person detained may, under oath, deny any of the facts set forth in the return or allege any other material facts.
> The return and all suggestions made against it may be amended, by leave of court, before or after being filed.
> The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require.

28 U.S.C. § 2243. The Court previously determined that Petitioner was entitled to an evidentiary hearing regarding the disputed fact of Petitioner's birthplace. Based on the evidence presented at the evidentiary hearing, the Court will "summarily hear and determine" the disputed fact of Petitioner's birthplace and citizenship. *See* 28 U.S.C. § 2243. The findings of fact in this case, set forth in the Court's previous order, were not disturbed by the Court of Appeals and are not repeated here. *See* ECF No. 167 at 4–27.

Petitioner claims in his habeas petition that he was born in Los Angeles in 1969 and that, in 2011, CBP officials unlawfully refused to allow him to enter the United States and removed him to Mexico, where he now resides. (ECF No. 1 ¶ 1–2, 13, 44). "[T]he habeas petitioner generally bears the burden of proof." *Garlotte v. Fordice*, 515 U.S. 39, 46

12

14-cv-1434-WQH-BLM

(1995). However, in this case, the Court of Appeals remanded with instructions to apply the framework set forth in *Mondaca-Vega* to resolve the disputed fact of Petitioner's birthplace and adjudicate Petitioner's claims for relief pursuant to 28 U.S.C. § 2241, 28 U.S.C. §§ 2201–02, Rule 65, and the Fifth and Fourteenth Amendments. *Olivas*, 743 F. App'x at 891.[3]

The *Mondaca-Vega* court set forth the following framework:

> The government bears the ultimate burden of establishing all facts supporting deportability by clear, unequivocal, and convincing evidence. . . . When, however, the government offers evidence of foreign birth, a rebuttable presumption of alienage arises, shifting the burden to the alleged citizen to prove citizenship. . . . Upon production by a petitioner of substantial credible evidence of the citizenship claim, this presumption bursts and the burden shifts back to the government to prove the respondent removable by clear and convincing evidence.

*Id.* at 419 (quotations and alterations omitted). In addition, the remand order states that the government has the burden to set forth "evidence which is clear, unequivocal, and convincing," when "one has, over a long period of years, acted in reliance upon a decision . . . admitting him as a citizen of the United States . . . ." *Olivas*, 743 F. App'x at 890–91 (citing *Lung*, 261 F.2d at 724). The plaintiff in *Lung* was born in 1899 in Hawaii and, in 1924, immigration authorities "rendered a decision admitting [the plaintiff] as a Hawaiian-born citizen of the United States." 261 F.2d at 720. In 1957, the government denied the plaintiff's passport application, and he brought an action seeking a declaratory judgment of citizenship. *Id.* The Court of Appeals stated that the plaintiff was "required to establish his citizenship by a fair preponderance of the evidence," "the ordinary burden of proof resting on plaintiffs in civil actions," which was satisfied in that case by the 1924 decision admitting the plaintiff as a citizen. *Id.* The Court of Appeals held that the government

---

[3] In *Mondaca-Vega*, the Court of Appeals reviewed a removal proceedings order, stating, "[O]ur alienage-determination cases often describe the government's burden as proof by clear, unequivocal, and convincing evidence. . . . We use the term 'alienage determination' to refer to adjudications made pursuant to 8 U.S.C. § 1252(b)(5)(B) and 8 U.S.C. § 1503(a)." 808 F.3d at 418, 420 & n.6.

could rebut the plaintiff's evidence only by "clear, unequivocal, and convincing" evidence. *Id.*

In both *Mondaca-Vega* and *Lung*, the government had a clear and convincing evidentiary burden at one or more stages in the analysis. In *Mondaca-Vega*, the government starts out with a clear and convincing evidentiary burden, is relieved of that burden if the presumption applies, and is left with that burden if the petitioner shows substantial credible evidence of citizenship. 808 F.3d at 419. In *Lung*, the government started out with no burden and had a clear and convincing evidentiary burden after the plaintiff demonstrated his citizenship by a preponderance using the prior determination of citizenship. 261 F.2d at 720.

The Court commences the assessment of Petitioner's birthplace by applying the first step of *Mondaca-Vega* framework to determine whether "the government presents evidence of alienage." *Olivas*, 743 F. App'x at 890. Regarding the first step of the framework, "the government must prove alienage by clear, convincing, and unequivocal evidence of foreign birth before the burden shifts to the respondent." *Murphy v. Immigration & Naturalization Serv.*, 54 F.3d 605, 608 (9th Cir. 1995) (quotations omitted); *see also Tiznado-Reyna v. Barr*, 753 F. App'x 431, 432 (9th Cir. 2019).[4] The court in *Murphy* stated,

> [T]he "foreign born" presumption [i]s a special case where alienage is established by unrebutted direct proof by the alien's own testimony at the hearing or admission in evidence of an authenticated foreign birth certificate.
> . . .
> [T]he government here produced no foreign birth certificate for Murphy. Nor did Murphy admit in sworn testimony at the hearing that he was a foreign-born alien. The government merely set out its prima facie case of alienage based on circumstantial evidence. Prima facie evidence is "evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence."

---

[4] The *Mondaca-Vega* court discussed the second and third steps of the framework. 808 F.3d at 417–18. The *Mondaca-Vega* court did not expressly apply the first step; the petitioner had an authentic Mexican birth certificate and had stated under oath that he was born in Mexico and was a Mexican citizen. *Id.*

14

14-cv-1434-WQH-BLM

> The presumption established by a prima facie case does not reduce the government's burden of persuasion, but merely requires the opponent to go forward with evidence. . . . The burden of persuasion remains on the government at all times to establish alienage by clear and convincing evidence . . . .

54 F.3d 605, 609–10 (9th Cir. 1995) (quoting Black's Law Dictionary 1190 (6th ed. 1990)); *see also Garcia v. Holder*, 472 F. App'x 467, 468 (9th Cir. 2012).

In this case, the evidence in the record does not include a foreign birth certificate or statement by Petitioner that he was born in a country other than the United States. The government relies upon impeachment and circumstantial evidence to carry the burden to prove alienage by clear and convincing evidence and shift the burden to Petitioner. The Court concludes that the government's evidence is not sufficient to create the presumption of alienage in this case. *See Murphy*, 54 F.3d at 608 (requiring "unrebutted direct proof by the alien's own testimony at the hearing or admission in evidence of an authenticated foreign birth certificate"); *see also Mondaca-Vega*, 808 F.3d at 417, 419 (applying burden-shifting framework where undisputed evidence included Mexican birth certificate and the petitioner's prior sworn statements of Mexican birth and citizenship); *Corona-Palomera v. Immigration & Naturalization Serv.*, 661 F.2d 814, 818 (9th Cir. 1981) (concluding immigration judge properly applied burden-shifting alienage presumption when uncontested evidence included Mexican birth certificate); *Tiznado-Reyna*, 753 F. App'x at 432 (affirming application of burden-shifting alienage presumption when evidence included the undisputed fact of petitioner's foreign birth). The burden of persuasion does not shift to Petitioner at the first step of *Mondaca-Vega*.

Respondents have the burden to establish that Petitioner is an alien by clear and convincing evidence. *See Olivas*, 743 F. App'x 890 ("[T]he burden shifts *back* to the government to prove alienage by clear and convincing evidence.") (emphasis added). Clear and convincing evidence corresponds to "'an abiding conviction that the truth of the factual contentions' at issue is 'highly probable.'" *Mondaca-Vega*, 808 F.3d at 422 (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)); *see also Therasense, Inc. v.*

15

14-cv-1434-WQH-BLM

*Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (stating that clear and convincing evidence of intent to deceive can be established with "indirect and circumstantial evidence" if intent to deceive is "the single most reasonable inference able to be drawn from the evidence" and there are not "multiple reasonable inferences that may be drawn"); *Binion on Behalf of Binion v. Chater*, 108 F.3d 780, 789 (7th Cir. 1997) ("If evidence beyond a reasonable doubt is almost jet black on the black/white scale, clear and convincing evidence . . . requires a dark charcoal shade.").

In this case, Respondents rely upon the following statements to show that Petitioner was not born in the United States: Petitioner's grandmother stated on her visa application that she was living in Mexico on the date Petitioner was born; and Petitioner stated to immigration authorities that Perez, his mother, had previously claimed that he was born in Mexico. Respondents rely upon the following testimony: Perez's sister, Hortencia Garcia, testified that she was not pregnant while Perez was pregnant, which is inconsistent with the undisputed fact that Hortencia Garcia was pregnant and living in Los Angeles during Perez's pregnancy; and Perez's sister, Anastacia Ontiveros, testified that the midwife who delivered Petitioner lived in Tijuana, which is consistent with Perez stating in the Juarez Statement that Petitioner was born in Tijuana. Respondents rely upon the following evidence related to Petitioner's birth certificate: the birth certificate states that Petitioner was born at his aunt and uncle's home, which is inconsistent with Perez's testimony that Petitioner was born at her parents' home; and the birth certificate lacks the signature of an attendant other than Petitioner's mother, which is inconsistent with the undisputed fact that Petitioner's mother was not the sole attendant of Petitioner's birth. Respondents rely upon the following evidence related to Petitioner's baptism: Petitioner's aunts testified that Petitioner was baptized as an infant, which is consistent with the family custom to baptize children within weeks or months after birth, and inconsistent with the undisputed fact that Petitioner was baptized in the United States at nine years old. Respondents rely upon evidence that Perez registered with the Social Security Administration three months after Petitioner was born and registered Petitioner's birth five months after Petitioner was born.

Respondents rely upon the lack of evidence related to Petitioner's prenatal care, which is inconsistent with the family custom to obtain prenatal care.

The inconsistencies in prior statements and testimony, and the anomalies related to Petitioner's childhood records, supported the initial conclusion of the Court that Petitioner failed to carry his burden demonstrate his citizenship by a preponderance; however, the facts in the record do not carry the burden imposed upon the government by the Court of Appeals in this case. *See also* ECF No. 249 at 34:6–15 ("THE COURT: . . . . [I]f the burden doesn't shift . . . with respect to your view of the evidence, then what happens? If the burden doesn't shift back and remains with the government -- MR. BETTWY: . . . . [I]f the government does not satisfy the first step -- THE COURT: Yes. MR. BETTWY: -- in the framework, then the government hasn't met its burden of showing that he is an alien.").

## IV. CONCLUSION

Petitioner brought a claim for habeas relief pursuant to § 2241 on the grounds that he is "a natural-born U.S. citizen" who was "unlawfully exiled to Mexico" when "CBP officials unlawfully refused to allow him to enter the United States." (ECF No. 1 ¶¶ 1–2). "Under the Fourteenth Amendment, all people born in the United States are citizens of the United States." *Rivera v. Ashcroft*, 394 F.3d 1129, 1136–37 (9th Cir. 2005). The Fifth Amendment entitles Petitioner to judicial review of his "non-frivolous claim of citizenship" because the government lacks authority to remove a citizen from the United States. "If, as [Petitioner] plausibly contends, he is a citizen forced to live outside U.S. borders, he is clearly subject to greater restraints than other citizens." *Rivera*, 394 F.3d at 1136, *superseded by statute on other grounds as stated in Iasu v. Smith*, 511 F.3d 881, 886 (9th Cir. 2007) ("Effective May 11, 2005, the REAL ID Act . . . eliminat[ed] all district court habeas jurisdiction over orders of removal."). The Court exercises § 2241 subject-matter jurisdiction in this case "[b]ecause [Petitioner] has a colorable citizenship claim" and this case "do[es] not involve" a "final order[] of removal." *See Flores-Torres*, 548 F.3d at 711 (distinguishing *Iasu*). The Court previously concluded that Petitioner was "required to establish his citizenship by a fair preponderance of the evidence," "the ordinary burden of

proof resting on plaintiffs in civil actions." *See Lung*, 261 F.2d at 720. In this case, the government does not seek to remove a non-citizen or to expatriate a current citizen, *see Perez*, 356 U.S. at 47 n. 2; *Lim*, 431 F.2d at 199, and "the habeas petitioner generally bears the burden of proof," *see Garlotte*, 515 U.S. at 46; *Snook*, 89 F.3d at 605; *Berenyi*, 385 U.S. at 670–71.

However, the Court of Appeals found that the government negligently failed to commence removal proceedings and directed this Court to apply a case in which the plaintiff "ha[d], over a long period of years, acted in reliance upon a decision . . . admitting him as a citizen of the United States." *Olivas*, 743 F. App'x at 890–91, 890 n.1 (quoting *Lung*, 261 F.2d at 724). The Court of Appeals concluded that this case is an "alienage determination case[]" subject to a legal standard that ordinarily governs judicial review of removal proceedings and imposes a burden of proof on the government. *Id.* This Court finds that Respondents have failed to carry the burden of proof that was imposed on the government under the circumstances of this case, as determined by the Court of Appeals. Respondents have failed to overcome Petitioner's claim that he is entitled to habeas relief on the grounds that excluding him from the United States violates his constitutional rights as a natural-born U.S. citizen.

The Court has "broad discretion . . . in fashioning the judgment granting relief to a habeas petitioner." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *see also Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) ("[T]he federal habeas corpus statute does not deny the federal courts power to fashion appropriate relief other than immediate release. Since 1874, the habeas corpus statute has directed the courts to determine the facts and dispose of the case summarily, as law and justice require.") (quotations omitted). Congress has instructed the Court to "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243; *see also Hilton*, 481 U.S. at 775 ("[T]he Court interpreted the predecessor of § 2243 as vesting a federal court 'with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus.'") (quoting *In re Bonner*, 151 U.S. 242, 327 (1894)).

IT IS HEREBY ORDERED that Petitioner is entitled to prevail on his claim for habeas relief on the grounds that excluding him from the United States violates his constitutional rights as a natural-born U.S. citizen. Respondents are not entitled to exclude Petitioner from the United States on the grounds that Petitioner is not a natural-born U.S. citizen.

IT IS FURTHER ORDERED that Petitioner's requests for a declaration invalidating orders removing Petitioner from the United States and a declaration of citizenship pursuant to 28 U.S.C. §§ 2201–02, as well as Petitioner's request that the Court enjoin Respondents from prohibiting Petitioner's entry pursuant to Rule 65, are denied as moot.

IT IS FURTHER ORDERED that the Motion to Supplement the Record filed by Respondents (ECF No. 235) is DENIED.

Dated: August 22, 2019

Hon. William Q. Hayes
United States District Court