UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR OLIVAS,<br><br>                    Plaintiff-Petitioner,<br><br>v.<br><br>BILLY WHITFORD, Port Director of Calexico West Port of Entry, Customs and Border Protection; et al.,<br><br>                    Defendants-Respondents. | Case No.:  3:14-cv-01434-WQH-BLM<br><br>**ORDER** |

HAYES, Judge:

The matters pending before the Court are the Motion to Vacate Judgment and the Motion for Indicative Ruling filed by Respondents.  (ECF No. 261).

I.    **PROCEDURAL BACKGROUND**

On June 12, 2014, Petitioner filed a "Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief," naming as Respondents two local Customs and Border Patrol (CBP) officials, the Commissioner of the CBP, the Secretary of Homeland Security, and the Secretary of State.  (ECF No. 1).  Petitioner brings a claim for habeas relief pursuant to 28 U.S.C. § 2241 on the grounds that he is "a natural-born U.S. citizen" who was "unlawfully exiled to Mexico" when "CBP officials unlawfully refused to allow him to enter the United States."  *Id*. at 1-2.  Petitioner asserts jurisdiction

under § 2241, "§ 1331 (federal question)," "§§ 2201-02 (declaratory relief)," "Federal Rule of Civil Procedure 65 (injunctive relief), and the Fifth and Fourteenth Amendments to the U.S. Constitution." *Id.* at 4.

Petitioner brings the following four claims: (1) Right of U.S. Citizen to Return to United States under the Fifth and Fourteenth Amendments and the Non-Detention Act; (2) Right of U.S. Citizen Against Unlawful Detention under the Fifth and Fourteenth Amendments and the Non-Detention Act; (3) Violation of Fifth Amendment (Procedural Due Process); and (4) Violation of Fifth Amendment (Substantive Due Process). *See id.* at 18-20. Petitioner requests that this Court: "[i]ssue a writ of habeas corpus ordering Defendants to allow Plaintiff to enter the United States without detaining him;" "[d]eclare the Plaintiff is a U.S. citizen;" "[d]eclare that any order directing or authorizing Plaintiff's removal from the United States was entered in violation of the Due Process Clause of the Fifth Amendment and/or other applicable law and is therefore null and void;" "[e]njoin Defendants and their officers, agents, servants, employees, attorneys, and/or successors from prohibiting Plaintiff from entering the United States and/or detaining him at or after such entry;" "[g]rant Plaintiff reasonable attorneys' fees, costs, and other disbursements …;" and "[g]rant such other relief as the Court deems just and equitable." *Id.* at 20-21.

On June 16, 2014, the Court ordered Respondents to show cause why the Petition should not be granted. (ECF No. 5).

On July 8, 2014, Respondents filed a return to the Petition. (ECF No. 12). In the Return, Respondents allege that "[o]n December 17, 2010, Petitioner's mother, Ms. Olivas-Cervantes, was interviewed by a consular officer at the U.S. Consulate in Ciudad Juarez, Mexico." *Id.* at 2. "During the interview, Ms. Olivas-Cervantes signed an affidavit stating that Petitioner was not born in Los Angeles, but was born in a clinic in Tijuana, Mexico." *Id.* at 3. "On or about August 22, 2011, Petitioner applied for admission to the United States at the Calexico Port of Entry, claiming he was a U.S. citizen." *Id.* at 4. "The CBP officer who was processing Petitioner's application for admission prepared documentation to commence removal proceedings before an Immigration Judge ('IJ') … [t]wo notices to

Appear ('NTA') were prepared, and both appeared to have been 'cancelled,' under 8 C.F.R. § 239.2 prior to the commencement of proceedings."  *Id*. at 5.

On July 22, 2014, Petitioner filed a traverse.  (ECF No. 15).

On August 14, 2014, the Court issued an amended Order denying a motion to dismiss the Petition, referring the matter for expedited discovery, and stating, "The Court finds that the Petition adequately alleges a colorable claim of citizenship, and subject-matter jurisdiction exists in this Court."  (ECF No. 23 at 1-2).

On March 2, 2015, the Court denied a motion to dismiss filed by Respondents on the ground that 8 U.S.C. §1252(e)(3) deprives the Court of subject matter jurisdiction. (ECF No. 72).  The Court found that judicial review of Petitioner's claim is not precluded by § 1252(e)(3) "because it is not a challenge to the validity of expedited removal proceedings" and "[t]here is no allegation that a removal proceeding took place or that an order was issued."  *Id*. at 13.

In August of 2015, the parties filed supplemental briefing regarding the standard and burden of proof.  (ECF Nos. 96, 99, 102, 104, 105, 108).

On November 2, 2015, the Court issued an Order ruling on motions in limine and stating:

> Petitioner has asserted a non-frivolous claim of U.S. citizenship and this Court has jurisdiction pursuant to 28 U.S.C. § 2241 over Petitioner's habeas petition challenging his exclusion from the United States. *See Flores-Torres v. Mukasey*, 548 F.3d 708, 712-13 (9th Cir. 2008) (finding that the court had habeas jurisdiction where petitioner challenged his detention in the absence of a final order of removal).
>
> Pursuant to 28 U.S.C. § 2243, Petitioner is entitled to an evidentiary hearing to prove the disputed fact that he was born in El Monte, California and that he is entitled to an order allowing him to enter and remain in the United States. The Court will hold an evidentiary hearing to "summarily hear and determine" the disputed fact of petitioner's place of birth and citizenship. 28 U.S.C. § 2243.
>
> Petitioner bears the burden of establishing, by a preponderance of the evidence, that he is being unlawfully excluded from the United States because he is a citizen of the United States by birth. *See Snook v. Wood*, 89 F.3d 605 (9th Cir. 1996) ("It is the petitioner's burden to prove his custody in violation

of the Constitution, laws or treaties of the United States."). *See also Berenyi v. District Director, Immigration & Naturalization Serv.*, 385 U.S. 630, 670-71 (1967) (finding that when a person outside of the United States seeks a declaration of citizenship, "[h]e is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship…. [I]t has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect.").

(ECF No. 126 at 3-4).  The Court further noted,

> In the immigration context the government brings the action to remove a noncitizen who is currently residing in the United States or to expatriate a current citizen and therefore the burden of proof may shift to the government. *See e.g., Perez v. Brownell*, 356 U.S. 44, 47 n. 2 (1958) ("The Government must prove the act of expatriation on which the denial [of a declaration of nationality] was based by 'clear, unequivocal, and convincing' evidence …." (internal citations and quotation marks omitted)); *Lim v. Mitchell*, 431 F.2d 197, 199 (9th Cir. 1970) (shifting the burden from Plaintiff to the government to rebut Plaintiff's evidence of citizenship when Plaintiff was living in the United States and had previously been given a certificate of identity as a citizen after a hearing before the Board of Special Inquiry).

*Id*. at 4 n.1.

The Court held a four-day evidentiary hearing beginning on November 12, 2015. (ECF Nos. 135, 137-39).

On June 28, 2016, the Court denied the Petition, concluding that "Petitioner has not met his burden to prove that he is being unlawfully excluded from the United States because he is a citizen of the United States by birth."  (ECF No. 167 at 39).

On August 16, 2017, the Court ordered entry of judgment in favor of Respondents and against Petitioner as to all claims in this action, concluding that the Court lacked jurisdiction over the remaining claims.  (ECF No. 212).

On November 29, 2018, the Court of Appeals vacated this Court's August 16, 2017 Order, stating, "The district court erred in requiring Olivas to bear the burden of proving his citizenship by a preponderance of the evidence. Instead, as we held in *Mondaca-Vega v. Lynch*, a burden-shifting framework applies in alienage determination cases."  *Olivas v.*

4

*Salazar*, 743 F. App'x 890, 890 (9th Cir. 2018) (citing *Mondaca-Vega v. Lynch*, 808 F.3d 413 (9th Cir. 2015)); ECF No. 230 (same).  The Court of Appeals remanded to this Court to weigh the evidence using the *Mondaca-Vega* framework, "in which the government presents evidence of alienage, the petitioner responds with substantial credible evidence of citizenship, and then the burden shifts back to the government to prove alienage by clear and convincing evidence." *Id*.  The Court of Appeals rejected the government's argument that *Mondaca-Vega* applies only in removal proceedings, not in this action for habeas and declaratory relief.  *See id*. at 890 n.1.  The Court of Appeals stated,

> Olivas was served with a Notice to Appear ("NTA"), which should have triggered a hearing before an immigration judge. But because the government failed for over two years to file the NTA with the immigration court, no hearing was ever scheduled. After repeated unsuccessful attempts to inquire about the status of his hearing, on June 12, 2014, Olivas filed this suit seeking determination of his citizenship status….
>
> [T]he government concedes that had it commenced removal proceedings by filing the NTA, as it admits at oral argument that it was required to do, *see* 8 C.F.R. §§ 1235.3(b)(5), 1235.6, 1003.13, 1003.14(a), *Mondaca-Vega* would squarely control. Olivas claims that for two years, he called the government's hotline number weekly, and visited the border at least seven times, to inquire about a hearing. He claims that agents threatened him with detention if he persisted. The government may not benefit from its own negligence.

*Id*. at 890 & n.1.

On August 22, 2019, the Court granted the Petition, concluding that "Petitioner is entitled to prevail on his claim for habeas relief on the grounds that excluding him from the United States violates his constitutional rights as a natural-born U.S. citizen." (ECF No. 250 at 19).  The Court further concluded that "Respondents are not entitled to exclude Petitioner from the United States on the grounds that Petitioner is not a natural-born U.S. citizen."  *Id*.  On the same day, the Court ordered entry of judgment in favor of Petitioner and against Respondents.  (ECF No. 251).

On February 25, 2020, Respondents filed a Motion to Vacate Judgment and a Motion for Indicative Ruling.  (ECF No. 261).  On April 13, 2020, Petitioner filed a Response in

5

opposition.  (ECF No. 266).  On May 10, 2020, Respondents filed a Reply.  (ECF No. 274).  On May 27, 2020, Petitioner filed a Sur-reply.  (ECF No. 277).

## II.   CONTENTIONS OF THE PARTIES

Respondents request that the Court vacate its August 22, 2019 judgment (ECF No. 251) pursuant to Federal Rule of Civil Procedure 60(b).  Respondents further request an indicative ruling pursuant to Rule 62.1 that, but for the pending appeal, the Court would grant Respondents' Motion to Vacate Judgment and/or conclude that the Motion to Vacate Judgment raises a substantial issue.  Respondents assert that they recently discovered Petitioner's October 12, 1969 baptismal register in Mexicali, Mexico, which proves that Petitioner was born on August 10, 1969 in Tijuana, Mexico.  Respondents contend that the baptismal register constitutes newly discovered evidence.  Respondents contend that they exercised reasonable diligence in searching for evidence of Petitioner's birth in Mexico.  Respondents contend that Petitioner should be estopped from challenging whether Respondents exercised reasonable diligence because Petitioner offered false and misleading evidence to support his position that he was born in the United States.  Respondents contend that introduction of the baptismal register into evidence would change the outcome of this case.  Respondents contend that the baptismal register is admissible and constitutes clear and convincing evidence of Petitioner's alienage.

Petitioner contends that Respondents' Motion to Vacate Judgment is untimely because it was not filed within a reasonable time after entry of judgment on August 22, 2019.  Petitioner contends that Respondents' Motion to Vacate Judgment fails to meet the stringent standards for vacating a final judgment.  Petitioner contends that Respondents have failed to prove that the evidence is newly discovered.  Petitioner contends that Respondents have failed to exercise reasonable diligence in searching for the baptismal register.  Petitioner contends that introduction of the baptismal register into evidence would not change the outcome of this case.  Petitioner contends that the baptismal register is inadmissible and is insufficient to prove by clear and convincing evidence that Petitioner is not a U.S. citizen.

III. **STANDARD OF REVIEW**

a. **Motion for Indicative Ruling**

"The filing of a notice of appeal divests the district court of jurisdiction." *Gould v. Mut. Life Ins. Co. of New York*, 790 F.2d 769, 772 (9th Cir. 1986) (citations omitted). When a "Rule 60(b) motion … [is] filed after [a] notice of appeal ha[s] been filed," "[t]he district court lack[s] jurisdiction to entertain the Rule 60(b) motion …." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004) (citations omitted). "To seek Rule 60(b) relief during the pendency of an appeal, the proper procedure is to ask the district court whether it wishes to entertain the motion, or to grant it, and then move [the court of appeals], if appropriate, for remand of the case." *Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2004) (internal quotation marks and citation omitted).

Federal Rule of Civil Procedure 62.1 states that

(a) Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
    (1) defer considering the motion;
    (2) deny the motion; or
    (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.
(b) Notice to the Court of Appeals. The movant must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1 if the district court states that it would grant the motion or that the motion raises a substantial issue.
(c) Remand. The district court may decide the motion if the court of appeals remands for that purpose.

Fed. R. Civ. P. 62.1.

If the district court issues an indicative ruling, either that it would grant the motion or that there is a substantial issue, the court of appeals then decides whether to remand the case for a ruling by the district court. *See e.g.*, *Knight v. Trimble*, No. C 10-00276 SBA (pr), 2013 WL 6140743, at *2 (N.D. Cal. Nov. 21, 2013); *Russell Rd. Food & Beverage, LLC v. Galam*, No. 2:13-CV-776 JCM (NJK), 2013 WL 2949615, at *2 (D. Nev. June 13,

2013).  A statement that the motion raises a substantial issue does not bind the district court to a particular ruling on the motion after remand.  *See e.g.*, *Knight*, 2013 WL 6140743, at *2; *Russell Rd.*, 2013 WL 2949615, at *2; *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 4097751, at *3 (N.D. Cal. Sept. 17, 2012).

### b.  Motion to Vacate Judgment

Federal Rule of Civil Procedure 60(b) provides the bases from which a party can seek relief from a final judgment of the Court.  Rule 60(b) states that

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Rule 60(b) "attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done."  *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007) (internal quotation marks and citation omitted).  The decision of whether or not to grant relief under Rule 60(b) is matter of the district court's discretion.  *See Fantasyland Video, Inc. v. Cty. of San Diego*, 505 F.3d 996, 1005 (9th Cir. 2007).  Pursuant to Rule 60(b)(2),

> Relief from judgment on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes "newly discovered evidence" within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of "such magnitude that production of it earlier would have been likely to change the disposition of the case."

*Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (citation omitted).

## IV.   DISCUSSION

### a. Newly Discovered Evidence

Respondents assert that they "did not discover the Mexicali baptismal register relating to [Petitioner] until October 31, 2019." (ECF No. 261 at 13). Respondents assert that they "were unaware of the existence of the 1969 baptismal register in Mexicali, Mexico …." *Id*. Petitioner contends that Respondents "have not proven by admissible testimony that their alleged evidence existed when judgment was entered." (ECF No. 266 at 25) (emphasis omitted). Petitioner asserts that Respondents offer two pieces of allegedly newly discovered evidence: "an untranslated 'Certificado de Bautismo' and fragmentary photographs of selected excerpts of a heavily redacted alleged baptismal register." *Id*. at 24. Petitioner contends that Respondents have failed to prove that the "Certificado de Bautismo" and photographs "existed at the time of judgment." *Id*. at 25. Petitioner contends that Respondents have failed to prove that the alleged baptismal register "itself existed when judgment was entered." *Id*.

The Court of Appeals has stated that a "declaration is not 'newly discovered evidence' under Rule 60(b)(2) [if] it discusses evidence that was not in existence at the time of the judgment." *Fantasyland Video*, 505 F.3d at 1005 (citation omitted). Respondents submit a declaration of a Consular Officer employed by the State Department in Tijuana, Mexico in support of their Motion to Vacate Judgment and Motion for Indicative Ruling. *See* Cardenas Decl., ECF No. 261-2. The Consular Officer states that he "photographed record number (Acta) 1175 in folder (Folio) 122 of book (Libro) 2 of the baptismal register for the Parish at Avenida Sinaloa 1201, Colonia Esperanza, in Mexicali, Mexico" on November 25, 2019. *Id*. at ¶ 8, ECF No. 261-2 at 2. The Consular Officer states that "[t]he accompanying photographs (Exhibit 1) accurately depict … the … entry in the Parish's baptismal register for Oscar Ivan Olivas, which lists his place of birth as Tijuana, Baja California, his date of birth as August 10, 1969 …." *Id*. at ¶ 9, ECF

No. 261-2 at 3.  The Consular Officer states that he "confirmed with the custodian of the Parish records that the records are regularly-kept records of the Parish, and that entries, including the place of birth of the person baptized, are made at or near the time of the baptism according to information provided by the party requesting the baptism."  *Id*. at ¶ 10, ECF No. 261-2 at 3.  The Consular Officer states that he "also confirmed with the Parish custodian … that the place of birth of Oscar Ivan Olivas was Tijuana, Baja California."  *Id*. at ¶ 11, ECF No. 261-2 at 3.  The Consular Officer states that he "also obtained certification of the … baptismal record of Oscar Ivan Olivas by working with the Cathedral parish custodian, to obtain a Certificado de Bautismo (Certificate of Baptism) which sets forth the information reflected in the Parish's baptismal register."  *Id*. at ¶ 12, ECF No. 261-2 at 3.  The Consular Officer states that "[t]he accompanying Certificado de Bautismo (Certificate of Baptism) of Oscar Ivan Olivas dated October 31, 2019 (Exhibit 2), is the original document that I obtained."  *Id*. at ¶ 13, ECF No. 261-2 at 3.

The Court concludes that Respondents' Motion to Vacate Judgment and the accompanying declarations and exhibits "raise[] a substantial issue" as to whether Respondents have "show[n] the evidence relied on in fact constitutes 'newly discovered evidence' within the meaning of Rule 60(b) …."  Fed. R. Civ. P. 62.1(b); *Feature Realty*, 331 F.3d at 1093 (citation omitted).

### b. Due Diligence

Respondents contend that they "diligently searched for any and all evidence of [Petitioner's] birth in Mexico and has no reason to believe that a baptismal registration existed or could be found in Mexico."  (ECF No. 261 at 13).  Respondents contend that they "exercised reasonable diligence" "[w]hen this case began" "by requesting that the State Department conduct a second search for a Mexican registration of [Petitioner's] birth to confirm that none could be found."  *Id*. at 14.  Respondents assert that "[t]he State Department concluded that no birth registration existed or, if it existed, that [Petitioner's] mother 'must have used a completely different name that has no association with any family members.'"  *Id*. (citation omitted).  Respondents assert that the State Department

"does not normally ask the Catholic Church in Mexico to search for a baptismal registration unless it knows that, and where, it exists." *Id*. at 15.   Respondents contend that "[r]easonable diligence did not require asking the Catholic Church in Mexico to conduct a diocese-wide search of over 200 parishes in Mexicali and Tijuana for a baptismal registration when there was only a hunch that it might exist and a belief that, even if it existed, probably could not be found." *Id*.   Respondents contend that Petitioner "took the litigation position that he was baptized at age nine in the United States, and not as an infant in Mexico, and he offered false and misleading evidence to support his position that he was born in the United States." *Id*. at 13.   Respondents contend that Petitioner should "be estopped from challenging whether Respondents exercised reasonable diligence to find his Mexican baptismal registration." *Id*.

Petitioner contends that Respondents "cannot show reasonable diligence" because Respondents "chose not to look for the alleged baptismal record before entry of judgment …." (ECF No. 266 at 27) (emphasis omitted).   Petitioner asserts that the baptismal register "was not a secret document" and "was available to inspect on request." *Id*. at 28.   Petitioner contends that Respondents "have no credible excuse for not locating the alleged baptismal register long before final judgment was entered in favor of [Petitioner]." *Id*. at 29.

On August 22, 2019, the Court ordered entry of judgment in favor of Petitioner and against Respondents.   (ECF No. 251).   Respondents state that they received emails from Petitioner's counsel on August 23 and 26, 2019, informing Respondents that Petitioner would "be working on getting … a passport as soon as possible." Bettwy Decl. ¶¶ 10-11, ECF No. 261-1 at 2.   Respondents state that they "informed State Department counsel" on August 29, 2019 that Petitioner "intended to apply for a passport …." *Id*. at ¶ 13, ECF No. 261-1 at 3.   Respondents state that State Department counsel informed them on September 5, 2019 that Petitioner's "renewed U.S. passport would likely be denied …." *Id*. at ¶ 14, ECF No. 261-1 at 3.   Respondents state that

In anticipation of litigation over a denial of [Petitioner's] third passport application, [Respondents] proposed a third search for a Mexican birth

certificate and described reasons for considering the possibility that [Petitioner's] mother might have baptized him as an infant, possibly either in Los Angeles or in the Mexican state of Baja California before moving to the United States in early November 1969.

*Id*. at ¶ 16, ECF No. 261-1 at 3.  Respondents state that

State Department counsel independently decided that it would recommend committing time and resources to conduct a renewed search for a Mexican birth registration and to coordinate with the Catholic Church in Mexico for a search of the baptismal registers of all parishes in Tijuana and Mexicali in the outside hope of finding additional evidence of [Petitioner's] birthplace.

*Id*. at ¶ 17, ECF No. 261-1 at 3.  Respondents state that

On November 7, 2019, State Department counsel informed [Respondents] that the registration of [Petitioner's] baptism had been found, showing that [Petitioner] was baptized in Mexicali, Baja California, on October 12, 1969, and that his place of birth was Tijuana, Baja California, Mexico.

*Id*. at ¶ 19, ECF No. 261-1 at 3.

The Court concludes that Respondents' Motion to Vacate Judgment and the accompanying declarations and exhibits "raise[] a substantial issue" as to whether Respondents have "exercised due diligence to discover this evidence …." Fed. R. Civ. P. 62.1(b); *Feature Realty*, 331 F.3d at 1093 (citation omitted).

### c.  Likelihood to Change the Disposition of the Case

Respondents contend that the "baptismal register constitutes clear and convincing evidence of [Petitioner's] alienage and increases the weight of other evidence of alienage." (ECF No. 261 at 16).  Respondents contend that "[c]ourts often consider the competing probative value of birth certificates and baptismal records, and depending on the circumstances, a timely baptismal record is due greater weight than a birth certificate."  *Id*. Respondents contend that "[t]he State Department recognizes baptismal certificates to be sufficient evidence of citizenship when the birth certificate is unreliable, as it is in this case."  *Id*. (citation omitted).  Respondents contend that Petitioner's "baptismal register is especially probative here, because the baptism was performed when he was only two

months old, because the register is the earliest record of his place of birth, and because baptism is a religious sacrament presumably conducted solemnly and ceremoniously." *Id.* at 17 (citations omitted).  Respondents contend that "there was no reason for [Petitioner's] mother or anyone to falsely report to the Mexicali church that [Petitioner] was born in Tijuana, Mexico, since the place of birth has no bearing on the proper place of baptism." *Id.* (citation omitted).

Petitioner contends that Respondents' "alleged new evidence is insufficient as a matter of law to change the outcome" because Respondents' "alleged new evidence is insufficient to sustain [Respondent]s' stringent burden to prove by clear and convincing evidence that [Petitioner] is not a U.S. citizen."  (ECF No. 266 at 47) (emphasis omitted). Petitioner contends that "[t]he alleged baptismal record does not increase the weight of other evidence."  *Id.* at 50 (internal quotation marks, alteration, and citation omitted). Petitioner contends that "[a]t best, the alleged baptismal records … are inconsistent with the uncontested facts that [Petitioner] was baptized in California and was issued a California birth certificate." *Id.* at 52.  Petitioner contends that "[e]ven if [Petitioner] was baptized in Mexicali, that does not prove by clear and convincing evidence he was not born in the United States." *Id.*  Petitioner contends that "[i]t is not unreasonable that a mother might have wanted to baptize her son in her hometown and thus traveled from Los Angeles to Mexicali to do so …." *Id.*  Petitioner contends that "it is not unreasonable to believe" that Petitioner's mother "told church officials [Petitioner] was born in Tijuana … even though he was born in the United States." *Id.*

On November 29, 2018, the Court of Appeals vacated this Court's August 16, 2017 Order, stating, "The district court erred in requiring Olivas to bear the burden of proving his citizenship by a preponderance of the evidence. Instead, as we held in *Mondaca-Vega v. Lynch*, a burden-shifting framework applies in alienage determination cases." *Olivas v. Salazar*, 743 F. App'x 890, 890 (9th Cir. 2018) (citing *Mondaca-Vega v. Lynch*, 808 F.3d 413 (9th Cir. 2015)); ECF No. 230 (same).  The Court of Appeals remanded to this Court to weigh the evidence using the *Mondaca-Vega* framework, "in which the government

presents evidence of alienage, the petitioner responds with substantial credible evidence of citizenship, and then the burden shifts back to the government to prove alienage by clear and convincing evidence." *Id*. The Court of Appeals rejected the government's argument that *Mondaca-Vega* applies only in removal proceedings, not in this action for habeas and declaratory relief. *See id*. at 890 n.1.

The Court concludes that Respondents' Motion to Vacate Judgment and the accompanying declarations and exhibits "raise[] a substantial issue" as to whether "the newly discovered evidence [is] of 'such magnitude that production of it earlier would have been likely to change the disposition of the case.'" Fed. R. Civ. P. 62.1(b); *Feature Realty*, 331 F.3d at 1093 (citation omitted).

## V.   CONCLUSION

IT IS HEREBY ORDERED that the Motion for Indicative Ruling filed by Respondents (ECF No. 261) is GRANTED. The Court indicates that the Motion to Vacate Judgment filed by Respondents (ECF No. 261) "raises a substantial issue." Fed. R. Civ. P. 62.1(b). The Court shall decide the Motion to Vacate Judgment (ECF No. 261) "if the court of appeals remands for that purpose." Fed. R. Civ. P. 62.1(c).

Dated: June 4, 2020

Hon. William Q. Hayes
United States District Court